FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 27, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHORT STOP SHELL, LLC, a Washington company,<br><br>               Plaintiff,<br><br>v.<br><br>CHEVRON CORPORATION, and its predecessor companies and subsidiaries; and CHEVRON USA, INC., and its predecessor companies and subsidiaries,<br><br>               Defendants. | NO: 1:19-CV-3103-RMP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is a Motion to Dismiss, for a More Definitive Statement, and to Strike, ECF No. 5, by Defendants Chevron Corporation and Chevron U.S.A., Inc. ("Chevron U.S.A.") and a Motion for Partial Summary Judgment as to Liability under Washington's Model Toxics Control Act, ECF No. 7, by Plaintiff Short Stop Shell, LLC ("Short Stop"). Having reviewed all materials submitted by the parties, including the supplemental briefing submitted on August 5

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

and 16, 2019, having heard oral argument on August 2, 2019, and having reviewed the relevant law, the Court is fully informed.

## BACKGROUND

*Requests for Judicial Notice*

Defendants request that the Court take judicial notice of several documents offered with their opposition to Plaintiff's Motion for Partial Summary Judgment. Plaintiff did not respond to the requests.

Rule 201(b), Fed. R. Evid., provides that a court may take notice of a "fact that is not subject to reasonable dispute because it:

(1) is generally known within the trial court's territorial jurisdiction; or
(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

In light of these standards, Defendants request that the Court take notice of the following, with the Court's rulings set forth in the rightmost column of the table.

| Request and document offered in support | Fact alleged to be supported | Ruling |
|---|---|---|
| 1: An "Entity Search" report from the State of Delaware, Department of State: Division of Corporations website. ECF No. 20-1 at 2. | Chevron Corporation was incorporated in Delaware in 1926. | Granted. This fact is adjudicative in nature, not subject to reasonable dispute and is readily verifiable. |
| 2: An "Entity Search" report from the State of Delaware, Department of State: Division of | Texaco Inc. ("Texaco") was incorporated in Delaware in 1926. | Granted. This fact is adjudicative in nature, not subject to reasonable dispute and is readily verifiable. |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

| | | |
|---|---|---|
| Corporations website. ECF No. 20-1 at 4. | | |
| 3: Chevron Corporation's January 18, 2002 Amended Statement. ECF No. 20-1 at 6−7. | Chevron Corporation changed its name to ChevronTexaco Corporation ("ChevronTexaco") in October 2001. | Granted. This fact is adjudicative in nature, not subject to reasonable dispute and is readily verifiable. |
| 4: Chevron Corporation's May 18, 2005 Amended Statement. ECF No. 20-1 at 9−10. | ChevronTexaco changed its name to Chevron Corporation in May 2005. | Granted. This fact is adjudicative in nature, not subject to reasonable dispute and is readily verifiable. |
| 5: The California Court of Appeal Case *Bonnifeld v. Chevron Corporation*, 2009 WL 1111601 (Cal.App. 2 Dist.). ECF No. 20-1 at 13−21. | The *Bonnifeld v. Chevron Corporation* opinion issued by the California Court of Appeal, Second District, exists and involved many of the same arguments at issue here. | Denied. The discussion and conclusions in the California Court of Appeal decision are not adjudicative facts reasonably susceptible to judicial notice.[1] Defendants may, and did, cite the Court to this case; however, the Court will not take judicial notice of its existence, or of its contents. |
| 6: Excerpts from Chevron Corporation's 2018 SEC Filing. ECF No. 20-1 at 23−25. | Chevron Corporation identified Chevron Investments Inc., Chevron U.S.A. Holdings Inc., Chevron U.S.A., and Texaco, among many other entities, as subsidiaries in 2018. | Granted. This fact is adjudicative in nature, not subject to reasonable dispute and is readily verifiable. |
| 7: A Business Entity Search of "Chevron | Chevron U.S.A. is an active Pennsylvania corporation. | Granted. This fact is adjudicative in nature, not |

---

[1] *See Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.*, 2014 U.S. Dist. LEXIS 71777 a *9, n. 8 (D. N.J. May 27, 2014) ("A court's reasoning in another case may be precedential or persuasive—although in this instance it is neither—but the facts and conclusions in another court's opinion certainly cannot be judicially noticed as an adjudicative fact under Rule 201.").

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3

| | | |
|---|---|---|
| U.S.A., Inc." from the State of Pennsylvania, Department of State: Division of Corporations' website. ECF No. 20-1 at 27−30. | | subject to reasonable dispute and is readily verifiable. |
| 8: Chevron Corporation's 2005 SEC 10-k filing. ECF No. 20-1 at 32−36. | The filing identifies Chevron Products Company as a division of Chevron U.S.A. and Chevron Environmental Management Company ("Chevron EMC") as a subsidiary of Chevron Corporation. | Granted. This fact is adjudicative in nature, not subject to reasonable dispute and is readily verifiable. |

*Underlying Events*

The following facts are undisputed unless otherwise noted.[2] This case concerns the efforts by the current owner of a service station in Cle Elum, Washington, (the "Property") that formerly operated as a Texaco-branded service station. Sometime before 1984, when Texaco allegedly owned and operated the Property, it installed and used six underground storage tanks to store gasoline and diesel. An individual named George Simpson purchased the Property in 1984, but Texaco continued to supply gasoline and diesel to the Property.

---

[2] The Court notes that Defendants object to the admissibility of various exhibits submitted by Plaintiff in support of its Motion for Partial Summary Judgment. ECF Nos. 24 and 33-2. The Court refrains from resolving those evidentiary objections until determining whether *any* of the evidence submitted by Plaintiff supports summary judgment.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

In approximately December 1996, the Washington Department of Ecology ("Ecology") conducted an environmental site assessment of the Property and other sites around Cle Elum and concluded that soil and groundwater samples from the Property reflected a level of petroleum hydrocarbon contamination in excess of MTCA cleanup levels. ECF No. 8-4 at 7; 9-1 at 2.[3] However, at that time, the Washington Department of Ecology did not require active remediation. ECF No. 9-1 at 2.

In August 2000, Texaco agreed to indemnify Mr. Simpson against

> . . . any third-party claims or agency orders resulting from, pertaining to, relating to or in any way connected with or arising out of, directly or indirectly, and actual petroleum hydrocarbon contamination originating from the Property in excess of cleanup levels established by the Ecology, which contamination originated from Texaco's operation of a gasoline state facility before June 30, 1984, or from Texaco's deliveries of motor fuels to the station after June 30, 1984.

ECF No. 9-1 at 3.

---

[3] Defendants dispute Plaintiff's characterization that soil and groundwater samples *from* the Property were contaminated in excess of MTCA cleanup levels with petroleum hydrocarbons because the Ecology report at issue concluded that "there were petroleum contaminants 'adjacent to or within' Simpson's Texaco property." ECF No. 22 at 4. The Court rejects that this fact is disputed because the Court does not decipher a meaningful distinction between "adjacent to or within" and "from the Property." The Ecology report found "[p]etroleum contaminants, above the MTCA Method A cleanup levels, . . . in soil and/or ground water samples from soil borings and monitoring wells adjacent to or within three operating facilities[,]" including the Property. The samples indicating the contamination were *from* the Property.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5

In October 2001, shareholders of Texaco became shareholders of Chevron Corporation in exchange for allowing Texaco to become a wholly owned subsidiary of Chevron Corporation, through . . . a 'reverse triangular merger.'" ECF No. 16 at 8. Chevron Corporation renamed itself ChevronTexaco Corporation ("ChevronTexaco"). ECF No. 20-1 at 6. Texaco merged with a wholly owned subsidiary of Chevron Corporation, Keepep, Inc. ECF No. 8-5 at 13. Keepep, Inc. ceased as a separate entity while Texaco became a wholly owned subsidiary of then-ChevronTexaco. ECF Nos. 21 at 2; 21-1 at 12. ChevronTexaco did not acquire Texaco's assets through the reverse triangular merger. ECF Nos. 21 at 2−3; 21-1.

In a letter dated July 29, 2002, Chevron Products Company Senior Counsel Jon Robbins wrote to Mr. Simpson to inform him that ChevronTexaco would agree to extend the indemnity agreement between Mr. Simpson and Texaco "to the purchaser" of the Property as long as that purchaser "agrees to be bound by the terms and conditions" of the indemnity agreement. ECF No. 9-6 at 2.

In a letter dated October 4, 2002, a project manager for Chevron EMC, Brett Hunter, wrote to Mr. Simpson on ChevronTexaco letterhead regarding "ChevronTexaco's environmental plans" for the Property. ECF No. 31-1 at 2−3. Mr. Hunter averred, "ChevronTexaco will continue to manage environmental investigation and clean-up activities at the subject site in accordance with WA DOB MTCA Regulations." *Id.* at 3. Chevron EMC is an indirectly wholly owned

subsidiary of Defendant Chevron Corporation that manages environmental matters for its affiliated companies, including Texaco. ECF No. 21 at 4.

ChevronTexaco changed its name back to Chevron Corporation in May 2005. ECF No. 20-1 at 9. Although disputed by Plaintiff,[4] based on the evidence currently before the Court, Texaco has continued to exist as a separate entity that "operates as an independent and ongoing business concern" since becoming a fully owned subsidiary of Chevron Corporation to the present day. ECF No. 21 at 3.

Ecology wrote to Mr. Hunter in a letter dated January 16, 2003, informing Chevron EMC of "Ecology's understanding that Chevron/Texaco is a former owner and operator of the [Property], and that credible evidence exists indicating that a release of a hazardous substance has occurred at this site." ECF No. 9-8 at 2. In outlining the evidence for its findings, Ecology recited that Texaco had owned the Property from 1962 until June 1984 and had continued to deliver fuel products to the property after Mr. Simpson became the owner in 1984. *Id.* Ecology did not refer to any evidence supporting that ChevronTexaco was the successor in liability to Texaco, and, indeed, did not refer to any merger between Chevron and Texaco. *See id.* at 2−3. Nevertheless, Ecology concluded in the letter, "As a result of this evidence, Chevron/Texaco, Inc. has been identified as a person potentially liable for the release of the above contaminants at the [Property]." *Id.* at 3.

---

[4] Plaintiff asserted a concern at oral argument that Texaco is merely a brand, but has not submitted any evidence to support that concern.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

In a letter dated February 27, 2003, Mr. Hunter of Chevron EMC wrote to Ecology on ChevronTexaco letterhead informing the agency that "Chevron" accepted the status of a potentially liable party for release of hazardous substances at the Property. ECF No. 9-10 at 2.[5] Mr. Hunter copied counsel for Chevron Products Company, a division of Defendant Chevron U.S.A., on the letter. ECF No. 9-10 at 2.

Ecology responded with a "Determination of Potentially Liable Person Status" letter dated March 10, 2003. ECF No. 9-12 at 2. Ecology addressed the letter to "Mr. Brett Hunter[,] *Chevron Products Company*," (emphasis added) but wrote in the body of the letter:

> We have received your letter dated February 27, 2003 in which *Chevron Environmental Management Company* accepts the status as a potentially liable person for a release at the Simpson's Texaco Site. On the basis of this statement, the Department of Ecology has determined that you are a Potentially Liable Person (PLP) with regard to this site.

*Id.* (emphasis added).

Plaintiff purchased the Property in 2012. *See* ECF No. 1 at 11. Around September 2015, Plaintiff allegedly decommissioned five underground storage tanks that appeared intact but were determined to have been leaking petroleum hydrocarbons into the soil and groundwater. *See* ECF No. 10-1. Plaintiff allegedly also found a sixth tank that had released petroleum hydrocarbons into the soil and

---

[5] Chevron EMC's letter refers to "potentially liable parties," while Ecology's Letter refers to "potentially liable persons."

groundwater. *Id.* at 3. Plaintiff alleges that it has incurred more than $275,000 to date in remediation costs to address contamination on the Property. ECF No. 10 at 2.

*Procedural History*

On March 6, 2018, Plaintiff filed this case, naming only Chevron U.S.A., Inc., as a Defendant, in state Superior Court in Kittitas County, Washington. ECF No. 1 at 1–2. In April 2019, Plaintiff received leave of the Superior Court to file an amended complaint naming Chevron Corporation as an additional defendant. *Id.* After Plaintiff filed the Amended Complaint, Defendant Chevron Corporation removed the matter to this Court on May 13, 2019. *Id.* Rather than file an answer, Defendants moved to dismiss Plaintiff's Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

**Legal Framework for Liability**

*Washington's Model Toxics Control Act ("MTCA")*

The MTCA is Washington's Superfund statute and imposes strict liability, joint and several, on certain categories of "liable persons," as defined in Revised Code of Washington ("RCW") § 70.105D.040(1). Liability under the MTCA is based on whether a person or entity falls within a liable party category, subject to any of the defenses listed in RCW § 70.105D.040(3). One of the categories of liable persons includes "[a]ny person who owned or operated [a] facility at the time of

disposal or release of hazardous substances." RCW § 70.105D.040(1)(b). The MTCA defines "release" as "any intentional or unintentional entry of any hazardous substance into the environment." RCW § 70.105D.020(25). "Disposal" is undefined.

The MTCA authorizes a private right of action, "including a claim for contribution or for declaratory relief, against any other person liable under RCW 70.105D.040 for the recovery of remedial action costs." RCW § 70.105D.080. "Recovery shall be based on such equitable factors as the court determines are appropriate." *Id*. A private cause of action must be brought within three years "from the date remedial action confirms cleanup standards are met[.]" *Id*.

*Successor Liability*

Under Washington law, the general rule is that a purchasing corporation does not assume the liabilities of its predecessor unless: "(1) the purchaser expressly or impliedly agrees to assume liability; (2) the purchase is a de facto merger or consolidation; (3) the purchaser is a mere continuation of the seller; or (4) the transfer of assets is for the fraudulent purpose of escaping liability." *Hall v. Armstrong Cork*, 103 Wn.2d 258, 262 (Wash. 1984).

That general rule and its exceptions emerged in the context of protecting commercial creditors and dissenting shareholders after corporate acquisitions. *Hall*, 103 Wn.2d at 262. However, Washington caselaw recognizes a further exception pertaining to claims for strict liability in tort, the "product line rule" of successor

liability, which applies when: (1) the transferee has acquired substantially all the transferor's assets, leaving no more than a mere corporate shell; (2) the transferee is holding itself out to the general public as a continuation of the transferor by producing the same product line under a similar name; and (3) the transferee is benefiting from the goodwill of the transferor. *Hall*, 103 Wn.2d at 262−63.

**Motion to Dismiss, for a More Definite Statement, and to Strike**

*Motions to Dismiss for Failure to State a Claim*

Complaints filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant challenges a complaint's sufficiency under Fed. R. Civ. P. 12(b)(6), the court must determine whether the complaint bears "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11

favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marin Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011 (per curiam) (internal quotation omitted).

*Motions for a More Definite Statement*

A motion for a more definite statement is warranted if a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). However, "[n]ormally . . . the basis for requiring a more definite statement under Rule 12(e) is unintelligibility, not mere lack of detail." *Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F. Supp. 2d 86, 110 (D.D.C. 2003) (internal quotation marks and citation omitted). Accordingly, courts should not allow parties to subvert federal pleading requirements "by requiring a plaintiff to amend a complaint that would be sufficient to survive a motion to dismiss." *Potts v. Howard Univ.*, 269 F.R.D. 40, 43 (D.D.C. 2010).

*Motion to Strike Language Regarding Unnamed Defendants in Caption*

Defendants move to strike the phrase "and their predecessor companies and subsidiaries" from the caption for this case. ECF No. 5 at 22. Plaintiff defends the use of the language in the caption of the Amended Complaint because "it is not used as an unnecessary repetition of the allegations throughout the pleading." ECF No. 14 at 17. In addition, Plaintiff maintains that the use of "their predecessor

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12

companies and subsidiaries" in the caption "pertains to and is necessary to issues and claims before this Court" because the language supports Plaintiff's attempt to hold Defendants liable despite what Plaintiff characterizes as "Defendants' frequent attempts to hide behind an intricate corporate shell game to avoid liability for cleanup of the Property . . . ." ECF No. 14 at 18.

Local Civil Rule 10(a)(3) addresses the issue of "unnamed" Defendants as follows:

> The use of 'John Doe' pleading is disfavored in federal court. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Where the identity of an alleged defendant is not known prior to the filing of a complaint, a plaintiff will be given an opportunity through discovery to identify the unknown defendant, unless it is clear that discovery would not uncover the identity of the defendant or that the complaint would be dismissed on another ground. A plaintiff must sufficiently allege the actions of each unknown defendant for which the plaintiff complains.

The Court finds that Plaintiff does not present good cause for including an unknown number of unnamed additional Defendants in the caption. Nor does Plaintiff set forth a plan for identifying any of the currently unnamed Defendants. Cognizant that pleading unnamed defendants is a disfavored practice, and that defendants have a strong interest in receiving notice that they have been sued, the Court finds it appropriate to strike "and their predecessor companies and subsidiaries" from the caption in this matter.

*Resolving Defendants' Motions*

Plaintiff alleges in the Amended Complaint that Texaco owned and operated the property from 1962 until 1984 and continued to supply gasoline products after

the sale. ECF No. 1 at 10. In addition, Plaintiff alleges that Texaco assumed liability for former owner Mr. Simpson and his successors in interest for "existing soil and groundwater contamination and any contamination resulting from the delivery of petroleum products by Texaco, Inc." ECF No. 1 at 10. Plaintiff further alleges that "Plaintiff is informed and believes, and therefore alleges, that Chevron acquired the liabilities of Texaco, Inc." ECF No. 1 at 11.

However, notably absent are specific allegations supporting that Defendants are successors in liability to Texaco. The briefing and oral argument on the pending motion to dismiss pinpointed this deficiency. With a broken link in the chain of liability linking Defendants to a basis for liability under the MTCA, Plaintiff has not plausibly alleged a claim for relief. However, the Court notes that Plaintiff referred to a new theory of liability for Defendants during oral argument on the instant motions that was not pleaded in the Amended Complaint: that Defendants delivered gasoline products to tanks at the Property that Defendants allegedly knew were leaking. Accordingly, the Court dismisses Plaintiff's Amended Complaint with leave to amend to properly allege a theory of liability against Defendants. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (leave to amend "shall be freely given when justice so requires" and granted "with extreme liberality"). Defendants' motion for a more definite statement is denied as moot in light of the anticipated Second Amended Complaint.

/ / /

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

**Motion for Partial Summary Judgment**

*Legal Standard*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. If the moving party meets this challenge, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." *Id.* at 324 (internal quotations omitted). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 631–32 (9th Cir. 1987).

*Resolving Plaintiff's Motion*

Plaintiff seeks partial summary judgment as to Defendants' liability under the MTCA for the cleanup of petroleum hydrocarbons at the Property. As discussed above, Plaintiff's pleadings were deficient in that they failed to allege sufficient facts to state a claim on which relief could be granted or that provided sufficient notice to these Defendants regarding a basis for liability against them.

In Plaintiff's reply brief regarding the partial summary judgment motion, Plaintiff argues that, "[f]or nearly two decades, Defendants have represented to the State of Washington, current and former owners of the Property, consultants, and contractors through their actions, conduct, and statements that they are responsible for the contamination and are liable parties for cleanup of the Property under [the MTCA]." ECF No. 41 at 2. Plaintiff argues that Defendants, through their actions, already have accepted liability for contamination of the Property and "are now judicially estopped" from denying liability in this litigation. ECF No. 29 at 7.

A federal court sitting in diversity applies federal law to determine whether judicial estoppel applies. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996). Courts may apply the equitable doctrine of judicial estoppel to "prevent a party from gaining an advantage by taking inconsistent positions" or in the service of "general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings and to protect against a litigant playing fast and loose with the courts." *Hamilton v. State Farm Fire & Cas.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 16

*Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (internal quotation omitted).  One of the primary considerations in deciding whether to apply the doctrine to a particular case is whether the party's later position is "'clearly inconsistent' with its earlier position." *Id.* at 782 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation omitted)).

Even setting aside Defendants' objections to the admissibility of some of Plaintiff's evidence, nothing that Plaintiff has submitted demonstrates that Defendants have taken inconsistent or incompatible positions, have accepted liability, or have otherwise taken on legal responsibility for the liabilities of Texaco with respect to the Property.  Having examined all of the correspondence between Chevron EMC project manager Mr. Hunter and Ecology that Plaintiff provided in support of its motion, the Court does not find any representation that either Defendant Chevron Corporation or Defendant Chevron U.S.A. expressly assumed Texaco's liabilities.  Illustratively, Ecology's "Determination of Potentially Liable Person Status" letter in March 2003, is imprecise as to *which* entity the agency determined was the potentially liable person for the contamination at the Property.  ECF No. 9-12 at 2 (addressing the determination to the Chevron Products Company while reciting that Chevron EMC had accepted potentially liable person status).  Moreover, the Court finds no justification for concluding that accepting *potentially* liable person status with Ecology is "clearly inconsistent" with Defendants' position before this Court that they did not assume Texaco's liabilities.  *See New Hampshire*,

532 U.S. at 750. The Court finds that the use of ChevronTexaco letterhead, communicating through Chevron EMC, and copying counsel from Chevron Products Company are insufficient to justify the application of judicial estoppel. Nor does the Court find the July 2002 letter to Mr. Simpson from Chevron Products Company counsel to be relevant since there is no documentation supporting that Plaintiff became a successor in interest to Mr. Simpson for purposes of the indemnity agreement. *See* ECF No. 9-6 at 2.

In short, Plaintiff has not shown that either Chevron Corporation or Chevron U.S.A. is a successor to Texaco or has assumed Texaco's historical liabilities. Therefore, there is a disputed issue of material fact as to whether either Defendant has undertaken, as a matter of law, Texaco's liabilities, which precludes any determination of Defendants' liability under MTCA at summary judgment.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6), **ECF No. 5**, is **GRANTED IN PART** with respect to **striking "and their predecessor companies and subsidiaries" from the caption** in this matter and **dismissing Plaintiff's Amended Complaint without prejudice and with leave to amend**. Defendants' motion is **DENIED AS MOOT** with respect to Defendants' request for a more definite statement under Fed. R. Civ. P. 12(e) and is **DENIED IN PART** with respect to dismissal with prejudice.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18

2.	Plaintiff's Motion for Partial Summary Judgment, **ECF No. 7**, is **DENIED**.

3.	Defendants' request for judicial notice of certain documents, **ECF No. 23**, is **GRANTED IN PART and DENIED IN PART** as set forth in the table above.

4.	Defendants' Objections to Plaintiff's Evidence, **ECF No. 24**, and to Plaintiff's Evidence Submitted in Connection with Its Reply Brief, **ECF No. 33-2**, are **OVERRULED AS MOOT**.

4.	Plaintiff shall file any Second Amended Complaint **no later than September 20, 2019**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** August 27, 2019.

>           *s/ Rosanna Malouf Peterson*
>           ROSANNA MALOUF PETERSON
>           United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 19